UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARTIN T. SOLOMON,

        Plaintiff,

Case No. 1:08-cv-858

Hon. Robert J. Jonker

vs.

MICHIGAN STATE POLICE, *et al.*,

        Defendants.

_____/

**REPORT AND RECOMMENDATION**

Plaintiff has filed a § 1983 civil rights action against defendants. This matter is now before the court on plaintiff's ex parte "motion for temporary restraining order" (docket no. 32).

**I.**    **Background**

The thrust of plaintiff's 74-page complaint is that defendants violated Michigan Department of Corrections (MDOC) policies, and the First, Eighth and Fourteenth Amendments, when they conspired to deter and penalize him for filing grievances and this § 1983 action. *See* docket no. 1. In this motion for a temporary restraining order (TRO), plaintiff alleges that he has been improperly held in segregation since August 21, 2007 for the major misconduct charge of sexually assaulting a prisoner named Cannon, even though Cannon admitted to lying about the sexual assault. On March 10, 2009, plaintiff was found not guilty of the previous sexual assault, but rather pled to and was found guilty of consensual sexual misconduct. For relief, plaintiff demands that this court: direct the United States Marshal's Service to seize "the entire hearing record" related to the major misconduct charge, which record is dated 2/10/09, 2/25/09, 3/5/09, 3/10/09 and 3/11/09 "before Defendants caused the loss of the exculpatory evidence;" direct

defendants to return all of plaintiff's legal property before March 25, 2009 (the date plaintiff was to respond to defendants' motion for summary judgment); direct that the MDOC release plaintiff from segregation and transfer him to another correctional facility; bring forth plaintiff "to testify before the court in this matter;" not advise the Michigan Attorney General's Office about the Marshal's future "surprise seizure of MDOC Hearing records;" direct the Michigan State Police to be a party to the seizure of the MDOC records; order a certified copy of the original records seized the MDOC; direct the Marshal's Service "to seize all records relating to the allege[d] sexual investigation;" and direct plaintiff [sic] to bring forth witnesses of defendant Ron Carpenter "falsifying official records."

## II.     Discussion

Fed. R. Civ. P. 65(b)(1) provides for the issuance of a TRO as follows:

> The court may issue a temporary restraining order without written or oral notice to the adverse party or its attorney only if:
>
> (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and
>
> (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

"An ex parte temporary restraining order is an extraordinary remedy which will not be granted unless the movant clearly shows that such relief is warranted." *Fort Wayne Women's Health Organization v. Brane*, 734 F.Supp. 849, 850 (N.D. Ind. 1990). Where a prison inmate seeks an order enjoining state prison officials, this court is required to proceed with the utmost care and must recognize the unique nature of the prison setting. *See Kendrick v. Bland*, 740 F.2d 432, 438, n. 3 (6th Cir. l984). Courts must accord prison administrators "wide-ranging deference in the

adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Ward v. Dyke*, 58 F.3d 271, 273 (6th Cir. 1995). Correctional officials are professional experts in matters of security and discipline; as such they are better suited to make decisions about security and discipline than are the courts. *Bell v. Wolfish,* 441 U.S. 520, 547 (1979). Moreover, "the operation of our correctional facilities is peculiarly the province of the Legislative and Executive Branches of our Government, not the Judicial." *Id.* at 548. For these reasons, a plaintiff attacking administrative decisions about issues of security and discipline must meet a heavy burden.

Here, plaintiff's attached affidavit fails to set forth "specific facts that clearly show that immediate and irreparable injury, loss, or damage will result to [him] before the adverse party can be heard in opposition." Fed. R. Civ. P. 65(b)(1)(A). Plaintiff's affidavit does not include a signature, and is neither notarized nor verified. *See* docket no. 32-2. Plaintiff's status as a *pro se* litigant does not excuse him from these procedural requirements. *Pro se* litigants is not entitled to special consideration with respect to straightforward procedural requirements that a lay person can comprehend as easily as a lawyer. *Jourdan v. Jabe*, 951 F.2d 108, 109-10 (6th Cir.1991). For these reasons alone his ex parte motion should fail.

Even if the court accepted this "affidavit" for purposes of granting relief under Rule 65, the court concludes that plaintiff is not entitled to a TRO. In reviewing requests for injunctive relief, the court considers (1) whether the movant has shown a strong or substantial likelihood or probability of success on the merits; (2) whether the movant would suffer irreparable injury without the injunction; (3) whether the preliminary injunction will cause substantial harm to others; and (4) whether the public interest would be served by issuance of the injunction. *See Rock & Roll Hall of*

*Fame v. Gentile Productions*, 134 F.3d 749, 753 (6th Cir. 1998).  The four factors listed above are meant to be balanced as they guide the court in exercising its discretion; they are not due rigid application and need not be assigned equal weight.  *In re Eagle-Pitcher Indus., Inc.,* 963 F.2d 855, 859 (6th Cir. 1992).  While a court need not consider any single factor as either indispensable or dispositive, neither is it required to conclude that all four support its decision.  The court's discretion is directed at the weight to be given each factor, and the effect to be accorded their mix.  Furthermore, the plaintiff bears the burden of persuading the court that the factors weigh in favor of granting injunctive relief.  *See Granny Goose Foods, Inc. v Brotherhood of Teamsters and Auto Truck Drivers Local No. 70 of Alameda County,* 415 U.S. 432, 441 (1974).

First, plaintiff has not shown a strong or substantial likelihood or probability of success on the merits.  Defendants' motion for summary judgment is based upon plaintiff's failure to exhaust administrative remedies.  The parties have submitted over 200 pages of legal arguments and exhibits with respect to this issue.  In addition, the two non-MDOC defendants have moved to dismiss on the basis of immunity.  Furthermore, defendants have a pending motion for sanctions against plaintiff for committing fraud on this court.  *See* docket no. 34.[1]  In light of this record, plaintiff's affidavit in support of his motion for a TRO falls far short of demonstrating that he has a strong or substantial likelihood of success on the merits of this case.

Second, plaintiff has not demonstrated that he will suffer irreparable injury without the issuance of a TRO.  Plaintiff's claim of staff interference with his litigation is belied by the fact that he filed a 168-page response to defendant's motion for summary judgment.  In addition,

---

[1] Plaintiff received a major misconduct on January 16, 2009, for possessing a forged document.  *See* docket no. 34-3.  Defendants point out that plaintiff filed a copy of this forged document (a memo from ARUS Walters dated January 8, 2009) to this court as part of his response to defendants' motion to dismiss.  *See* docket nos. 13, 22-2.

plaintiff's vague statements that he received death threats from unidentified individuals and that the warden's staff is threatening to starve him to death if he does not keep quiet are insufficient to demonstrate irreparable injury. Putting aside the vague and fantastic nature of these purported "threats", injunctive relief "will not be granted against something merely feared as liable to occur . . ." *State of Connecticut v. Commonwealth of Massachusetts*, 282 U.S. 660, 674 (1931). Third, it does not appear that the issuance of a TRO would cause substantial harm to others, but it would cause substantial cost to defendants as well as result in a major federal intrusion of an acknowledged state function. There are already sanctions available for spoliation of evidence by defendants or the MDOC. Fourth, there is no evidence that the public interest would be served by issuance of the TRO in this case. On the contrary, it would be a disservice to the public interest by ordering the United States Marshal's Service to intervene in disciplinary matters routinely handled by the MDOC. *See Bell,* 441 U.S. 520, 547-48; *Ward*, 58 F.3d at 273; *Kendrick*, 740 F.2d at 438, n. 3. On balance, there is no basis to grant plaintiff a TRO in this action. Plaintiff's request for a TRO should be denied.

### III.    Recommendation

For these reasons, I respectfully recommend that plaintiff's motion for a temporary restraining order (docket no. 32) be **DENIED**.

Dated:  May 12, 2009                                        /s/ Hugh W. Brenneman, Jr.
                                                                              HUGH W. BRENNEMAN, JR.
                                                                              United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within ten (10) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).