UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


MARTIN T. SOLOMON,

        Plaintiff,

v.

MICHIGAN STATE POLICE, *et al.*,

        Defendants.
_____/

Case No. 1:08-cv-858

Hon. Robert J. Jonker

**REPORT AND RECOMMENDATION**

        This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. This matter is now before the court on defendants' motion to dismiss (docket no. 13), defendants' motion for summary judgment (docket no. 25), plaintiff's motion for default judgment (docket no. 28) and defendants' motion for sanctions (docket no. 34).

    **I.**    **Background**

        Plaintiff seeks relief pursuant to 42 U.S.C. § 1983, which confers a private federal right of action against any person who, acting under color of state law, deprives an individual of any right, privilege or immunity secured by the Constitution or federal laws. *Burnett v. Grattan*, 468 U.S. 42, 45 n. 2 (1984); *Stack v. Killian*, 96 F.3d 159, 161 (6th Cir.1996). To state a § 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws of the United States, and (2) that the defendant deprived him of this federal right under color of law. *Jones v. Duncan*, 840 F.2d 359, 360-61 (6th Cir. 1988); 42 U.S.C. § 1983.

        Plaintiff's complaint names 13 defendants: the Michigan State Police; Michigan State Police Detective Jaquelyn Stasiak; Bellamy Creek Correctional Facility (IBC); Michigan

Department of Corrections (MDOC); Warden Kenneth McKee; Assistant Deputy Warden (ADW) D. Johnson;

ADW Cathy Stoddard; ADW Tracey; Inspector Young; Inspector Welton; Grievance Coordinator Carpenter; James Armstrong, Manager of the MDOC's Prisoner Affairs Section; and Resident Unit Manager (RUM) R. Wright. Plaintiff sues all defendants in their official and individual capacities.

Plaintiff makes two general claims against defendants. First, that defendants entered into a conspiracy to place him in segregation in retaliation for filing grievances and lawsuits. Second, that defendants rejected or denied his grievances while in segregation.

### A. Retaliation and Conspiracy

Plaintiff alleges that a prisoner at IBC reported that plaintiff pulled a knife on the other prisoner and sexually assaulted him. Although no knife was found in a search of plaintiff and cell, he was placed in segregation on August 21, 2007. Plaintiff alleges that defendants Schooley and McKee placed him in segregation in retaliation for filing grievances and lawsuits. In addition, plaintiff alleges that Inspector Young, Inspector Welton and Detective Stasiak conspired to prolong his segregation by waiting until May 21, 2008, to obtain a search warrant to release plaintiff's DNA. Plaintiff alleged that these actions violated his rights under the First, Fifth, Eighth and Fourteenth Amendments.

### B. Rejection and Denial of Grievances

Plaintiff also alleges that Grievance Coordinator Carpenter ignored his grievances, and that Warden McKee, ADW Johnson, ADW Tracey, ADW Stoddard, and James Armstrong "consented" to this action by upholding rejection of his grievances. Plaintiff contends that these

2

actions violated his First, Eighth and Fourteenth Amendment rights. Plaintiff seeks monetary damages and unspecified injunctive relief.

## II. Plaintiff's motion for default judgment (docket no. 28)

Plaintiff's motion for default judgment against the "MDOC defendants" is without merit. Entry of a default under Rule 55(a) is a prerequisite to entry of a default judgment under Rule 55(b). *Ramada Franchise Systems, Inc. v. Baroda Enterprises, LLC*, 220 F.R.D. 303, 305 (N.D. Ohio 2004). The clerk's office did not enter a default with respect to any of the defendants in this matter pursuant to Fed. R. Civ. P. 55(a). All defendants have appeared in this action. Accordingly, plaintiff's motion for default judgment should be denied.

## III. Motion to dismiss filed by Michigan State Police and Detective Stasiak (docket no. 13).

### A. Legal Standard

Defendants seek to dismiss plaintiffs' action for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (internal citations omitted). In making this determination, the complaint must be construed in the light most favorable to the plaintiff, and its well-pleaded facts must be accepted as true. *Morgan v. Churchs Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987). "When a court is presented with a Rule 12(b)(6) motion, it may consider the

3

Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. National Collegiate Athletic Association*, 528 F.3d 426, 430 (6th Cir. 2008).

### B. Michigan State Police

Defendant Michigan State Police seeks dismissal on the basis of Eleventh Amendment Immunity. The Eleventh Amendment provides that "[t]he judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens of Subjects of a Foreign State." *See, e.g., Thiokol Corp. v. Department of Treasury, State of Michigan, Revenue Division*, 987 F.2d 376, 381 (6th Cir. 1993) (Eleventh Amendment immunity is far reaching, barring "all suits, whether for injunctive, declaratory or monetary relief, against the state and its departments"). The states and their departments are immune under the Eleventh Amendment from suit in the federal courts, provided the state has not waived immunity and Congress has not expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98-101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir.1993). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir.1986). Accordingly, the Michigan State Police should be dismissed from this action.[1]

---

[1] The court notes that the State of Michigan is entitled to dismissal on plaintiff's claim for damages because it is not a "person" subject to liability for monetary damages under § 1983. *See Lapides v. Board of Regents of University System of Georgia*, 535 U.S. 613, 617 (2002) ("a State is not a 'person' against whom a § 1983 claim for money damages might be asserted").

4

C.    **Detective Stasiak**

1.    **Official Capacity**

Plaintiff's § 1983 claim for monetary damages against Detective Stasiak in her official capacity is barred by Eleventh Amendment immunity. *See Will v. Department of State Police*, 491 U.S. 58, 64-71 (1989); *Rodgers v. Banks*, 344 F.3d 587, 594 (6th Cir. 2003) ("the Eleventh Amendment bars § 1983 suits seeking money damages against states and against state employees sued in their official capacities"). Accordingly, this claim should be dismissed.

2.    **Individual Capacity**

Finally, Detective Stasiak seeks dismissal of plaintiff's claim seeking damages against her as an individual. The gist of plaintiff's claim is that Detective Stasiak prolonged his segregation by taking 9 1/2 months to obtain a search warrant for his DNA due to the fact that plaintiff would not cooperate in releasing his DNA. *See* Compl. at ¶¶ 17-19. Plaintiff alleged that a search warrant was unnecessary because his DNA profile was already in "CODIS",[2] that the MDOC had a DNA sample and that the Michigan State Police has its own profiling system for criminals. *Id.* at ¶ 20. Plaintiff contends that Detective Stasiak and MDOC personnel "initiated a

---

[2] Pursuant to congressional authorization, the FBI established "CODIS" (the Combined DNA Index System), which is described as "a national database containing electronic DNA profiles of convicted offenders from the state and federal systems, evidence from crime scenes, and unidentified human remains that allows government officials to match an electronic DNA profile to its donor's identity for 'law enforcement identification purposes,' 'judicial proceedings,' and 'criminal defense purposes.' 42 U.S.C. § 14132(a), (b)(3)." *Kaemmerling v. Lappin*, 553 F.3d 669, 673 (D.C. Cir. 2008). "Law enforcement officers use the CODIS to match one forensic crime scene sample to another, thereby connecting unsolved crimes through a common perpetrator, and to match evidence from the scene of a crime to a particular offender's profile, thereby solving crimes committed by known offenders." *Id.*

5

civil conspiracy to maliciously abuse[] the pending an [sic] outcome of D.N.A. results to subject plaintiff to cruel and unusual punishment." Compl. at p. 13.

To prove a First Amendment retaliation claim, plaintiff must establish three elements: "1) the plaintiff engaged in activities protected by the Constitution or statute; 2) the defendant took an adverse action that would deter a person of ordinary firmness from continuing to engage in that conduct; and 3) that this adverse action was taken at least in part because of the exercise of the protected conduct." *Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001). *See also Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). To establish the causation element of a retaliation claim, "the plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct." *Smith*, 250 F. 3d at 1037, *citing Mount Health City School District Board of Education v. Doyle*, 429 U.S. 274, 287 (1977). "[B]ecause prisoner retaliation claims are easily fabricated, and accordingly pose a substantial risk of unwarranted judicial intrusion into matters of general prison administration, we are careful to require non-conclusory allegations." *Bennett v. Goord*, 343 F.3d 133, 137 (2nd Cir. 2003) (internal quotation marks omitted).

Plaintiff's claim fails because Detective Stasiak was not responsible for plaintiff's incarceration and could not perform an adverse action against him in the context of his incarceration. In order to state a valid First Amendment retaliation claim, plaintiff must show that Stasiak had the ability and authority to take "adverse action" against him. *See Smith v. Campbell*, 250 F.3d 1031, 1038 (6th Cir. 2001); *Shehee v. Luttrell*, 199 F.3d 295, 300-01 (6th Cir. 1999). Stated another way, "[u]nder the causation element of a prisoner's prima facie case for retaliation, the subjective

6

motivation of the decisionmaker is at issue, that is, the plaintiff must show that the decision was motivated, in part, by the plaintiff's protected activity." *Smith*, 250 F.3d at 1038.

Plaintiff's claim arose from his placement in segregation while in the custody of the MDOC. There is no allegation that plaintiff was being detained by either the Michigan State Police or Detective Stasiak. On the contrary, plaintiff's complaint included copies of "Administrative Segregation Behavior Review" forms demonstrating that the MDOC was the entity responsible for his segregation. *See* docket no. 1-2, pp. 3-14. Plaintiff cannot state a cause of action for retaliation against Detective Stasiak in the absence of any allegation or inference that she was a decisionmaker possessing the ability and the authority to take an adverse action against him. In addition, since Detective Stasiak had no control over plaintiff's incarceration, plaintiff had no basis for his other constitutional claims arising from the segregation. Furthermore, plaintiff's conclusory allegations of a conspiracy between Detective Stasiak and prison staff are not sufficient to state a claim under § 1983. *See Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir.1987). Accordingly, all of plaintiff's claims against Detective Stasiak should be dismissed.

**IV.  MDOC defendants' Motion for Summary Judgment**

**A.  Legal Standard**

The remaining 13 defendants (referred to collectively as the "MDOC defendants") have moved for summary judgment for lack of exhaustion of administrative remedies and for the failure to state a claim as to certain defendants involved in the administrative grievance process. Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is

entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the standard for deciding a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). However, the court is not bound to blindly adopt a non-moving party's version of the facts. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

**B.     Exhaustion of administrative remedies**

The Prison Litigation Reform Act ("PLRA") 42 U.S.C. § 1997e, provides that a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731 (2001). A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741. In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones v. Bock*, 549 U.S. 199, 127 S.Ct. 910,

8

922-23 (2007); *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.' " *Jones*, 127 S.Ct. at 922-23.

The relevant MDOC Policy Directive 03.02.130 (effective Jul y 9, 2007) sets forth the applicable grievance procedures for prisoners in MDOC custody at the time relevant to this complaint. A prisoner must first attempt to resolve a problem with the staff member within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control. Policy Directive 03.02.130 at ¶ P. If the issue is not resolved, then the grievant may file a Step I grievance on the prescribed form within five business days after the grievant attempted to resolve the issue with appropriate staff. *Id.* at ¶¶ P and R. The Policy Directive provides the following directions for completing grievance forms:

> The issues shall be stated briefly but concisely. Information provided is to be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included.

*Id.* at ¶ R (emphasis in original). The prisoner must send the Step I grievance to the appropriate grievance coordinator. *Id.* at ¶ V. If the prisoner is dissatisfied with the Step I response, or does not receive a timely response, he must request the appropriate form and send it to the Step II Grievance Coordinator. *Id.* at ¶ BB. Finally, if a prisoner is dissatisfied with the Step II response, or does not receive a timely response, he must send a completed Step III grievance, using the appropriate form, to the Grievance and Appeals Section. *Id.* at ¶ FF.

Defendants have presented a cursory and incomplete argument in support of their claim that plaintiff failed to exhaust his administrative remedies. Defendants have done nothing more than point out a list of grievances, and present an affidavit listing 11 exhausted grievances, 4

rejected grievances and 4 grievances that defendant Armstrong determined to be unrelated to the issues in the complaint. *See* docket nos. 26 and 26-3. Defendants have failed to connect the issues grieved with the allegations made against them. In addition, defendants apparently admit that one grievance related to plaintiff's continued classification to administrative segregation, IBC 07-11-3422-22b, is exhausted. *See* docket no. 26 at pp. 10-11. Defendants' haphazard presentation fails to adequately address the exhaustion issue. A court need not make the lawyer's case by scouring the party's various submissions to piece together appropriate arguments. *Little v. Cox's Supermarkets*, 71 F.3d 637, 641 (7th Cir. 1995). "[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997). Accordingly, the exhaustion argument should be deemed waived.

### C. Defendants Carpenter, Johnson, Stoddard, McKee, and Armstrong

The complaint alleged that Defendants Carpenter, Johnson, Stoddard, McKee, and Armstrong improperly rejected grievances or "consented" to the denial of grievances. Grievance Coordinator Carpenter seeks summary judgment on the ground that he properly rejected plaintiff's grievances. ADW Johnson, ADW Stoddard, Warden McKee and Manager Armstrong state that "their only involvement" was upholding these rejected grievances. "The mere denial of a prisoner's grievance states no claim of constitutional dimension." *Alder v. Correctional Medical Services*, 73 Fed. Appx. 839, 841 (6th Cir. 2003). *See, e.g., Martin v. Harvey*, 14 Fed. Appx. 307, 309 (6th Cir. 2001) (observing that the denial of an appeal of a grievance complaining of inadequate medical care is not the same as the actual denial of a request to receive medical care"). Defendants Carpenter,

Johnson, Stoddard, McKee and Armstrong are entitled to summary judgment for these claims arising from their denial or rejection of plaintiff's grievances.

### V. Defendants' Motion for Sanctions (docket no. 34)

Finally, defendants seek sanctions against plaintiff for presenting a forged document to the court. Fed. R. Civ. P. 11 provides in pertinent part as follows:

> By presenting to the court a pleading, written motion, or other paper--whether by signing, filing, submitting, or later advocating it--an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
>
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and
>
> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Fed. R. Civ. P. 11(b).

"[T]he central purpose of Rule 11 is to deter baseless filings in district court." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990)."The essence of Rule 11 is that signing is no longer a meaningless act; it denotes merit. A signature sends a message to the district court that this document is to be taken seriously." *Business Guides, Inc. v. Chromatic Communications Enterprises, Inc.*, 498 U.S. 533, 546 (1991). The imposition of Rule 11 sanctions require a showing

of objectively unreasonable conduct. *First Bank of Marietta v. Hartford Underwriters Ins. Co.*, 307 F.3d 501, 517 (6th Cir. 2002).

Defendants' motion is based upon the following facts. In an affidavit submitted to the court in opposition to the motion to dismiss, plaintiff stated:

> I NEVER never . . . . . been Found Guilty of ANY M.D.O.C. Major misconduct for sexual and/or sexual assault since being incarcerated by the M.D.O.C. None whatsoever [.] See Exhibit C [.]

Plaintiff's Aff. at ¶ 18 (docket no. 22). Attached to this affidavit was a memorandum from "G. Walters, ARUS" dated January 8, 2009, which stated as follows:

> As requested in the kite I received from you dated 1/4/09, I have reviewed your major misconduct history. I have found no major misconduct guilty findings for any type of sexual misconduct / sexual assault.

Docket no. 22-2 at p. 7. Defendants have advised the court that this memorandum was a forged document, and that on January 27, 2009, plaintiff was found guilty of the major misconduct of possessing it. Docket no. 34-3 at p. 5. It was found that plaintiff took a memorandum from ARUS Walters and deleted the second paragraph, which prior to its deletion stated:

> The only indication of any sexual misconduct / sexual assault behavior would be your current classification to Administrative Segregation. As you are fully aware, you were classified to Administrative Segregation on 8/27/07 due to an ongoing investigation by an outside authority regarding an alleged sexual assault on another prisoner.

Docket no. 34-3 at pp. 3, 5.

In his response, plaintiff states that the victim in this case has recanted the reported sexual assault.[3] In addition, plaintiff asserts that the ARUS Walters was involved in the conspiracy

---

[3] After an extensive investigation, which included new evidence in which the victim recanted his original assault claim, the hearing officer entered a decision on March 10, 2009, reducing the charge from "Sexual Assault: Abusive Sexual Contact" to "Sexual Misconduct" (prisoner with prisoner). *See* docket no. 42-3. Plaintiff pled guilty to the reduced charge. *Id.*

12

against him and that the second paragraph of the memorandum was "falsely" added as part of the conspiracy. *See* docket no. 39.[4] Plaintiff's response is unpersuasive. The MDOC found plaintiff guilty of possessing a forged document. Plaintiff submitted this forged memorandum in an attempt to mislead the court as to his history of sexual misconduct and defeat defendants' motion to dismiss. Plaintiff's submission of this forged document was "objectively unreasonable" and an attempt to defraud the court. Accordingly, the court concludes that plaintiff's action violated Rule 11.

> The sanction provision for Rule 11 provides as follows:
>
> If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation. Absent exceptional circumstances, a law firm must be held jointly responsible for a violation committed by its partner, associate, or employee.

Rule 11(c)(1). A sanction imposed under Rule 11 "must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated." Rule 11(c)(4). "The sanction may include nonmonetary directives; an order to pay a penalty into court; or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation." *Id.*

Plaintiff is a state prisoner proceeding *in forma pauperis*. Since plaintiff has no assets, a monetary sanction would be an empty gesture and have little or no effect to deter plaintiff and other prisoners from filing fraudulent documents in prisoner civil rights actions. In the absence of monetary sanctions, the court could exclude evidence or dismiss the claim related to the forged memorandum. While the dismissal of a claim would normally be a strong deterrent, it would be no

---

[4] Plaintiff's sur-reply, docket no. 48, is not authorized by the court rules. *See* W.D. Mich. LCivR 7.2. Accordingly, the court will disregard it.

13

sanction in this case, because defendants' motion to dismiss is being granted on its merits. Given plaintiff's brazen act of submitting a false document to this court, the court concludes that the only effective deterrent to prevent plaintiff and other prisoner's from repeating this activity is the dismissal of this action with prejudice.

Dismissal has been found to be an appropriate sanction under Rule 11 for presenting fraudulent documents to the court in light of the "overwhelming evidence" of forgery. *See Mullins v. Allstate Ins. Co.*, No. 05-40118, 2007 WL 3038028 at *1 (E.D. Mich. Oct. 18, 2007). Furthermore, the court has the inherent power to dismiss plaintiff's action under certain limited circumstances. "When a litigant's conduct abuses the judicial process, the Supreme Court has recognized dismissal of a lawsuit to be a remedy within the inherent power of the court." *Pope v. Federal Exp. Corp.*, 974 F.2d 982, 984 (8th Cir.1992) (finding that dismissal of suit was appropriate "based on the district court's finding that manufactured evidence and perjured testimony had been introduced in an attempt to enhance the case through fraudulent conduct"). A court may impose sanctions pursuant to its inherent powers only when it finds the action in question was taken in bad faith or "tantamount to bad faith." *First Bank of Marietta*, 307 F.3d at 517. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 45 (1991) ("outright dismissal of a lawsuit . . . is a particularly severe sanction, yet is within the court's discretion").

Plaintiff's submission of the forged document was objectively unreasonable, taken in bad faith and an abuse of the judicial process. Accordingly, the court concludes that the sanction of dismissal is an appropriate deterrent in this matter.

**VI. Recommendation**

For the reasons set forth above, I respectfully recommend:

**A.** That plaintiff's motion for default judgment (docket no. 28) be **DENIED**.

**B.** That defendants' motion to dismiss (docket no. 13) be **GRANTED**.

**C.** That defendants' motion for summary judgment (docket no. 25) be **GRANTED** as to defendants Carpenter, Johnson, Stoddard and Armstrong, **GRANTED** as to defendant McKee with respect to plaintiff's claims regarding the denial of grievances, and **DENIED** in all other respects.

**D.** That defendants' motion for Rule 11 sanctions (docket no. 34) be **GRANTED** and that plaintiff's action be **DISMISSED.**


Dated: July 23, 2009                    /s/ Hugh W. Brenneman, Jr.
                                        HUGH W. BRENNEMAN, JR.
                                        United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within ten (10) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).