UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARTIN T. SOLOMON,

        Plaintiff,

Case No. 1:08-cv-858

Hon. Robert J. Jonker

v.

MICHIGAN STATE POLICE, *et al.*,

        Defendants.

_____/

**REPORT AND RECOMMENDATION**

        This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. This matter is now before the court on defendants' motion for summary judgment (docket no. 85) and plaintiff's "motion for preliminary and/or permanent injunction" (docket no. 96).

**I.**    **Background**

        Plaintiff's action arises from his placement in administrative segregation after another prisoner accused him of rape. Plaintiff alleged that he was placed him in segregation in retaliation for filing grievances and lawsuits, that the segregation was excessive, cruel and unusual punishment, and that these actions violated his rights under the First, Fifth, Eighth and Fourteenth Amendments. Plaintiff's complaint named 13 defendants: the Michigan State Police; Michigan State Police Detective Jaquelyn Stasiak; Bellamy Creek Correctional Facility (IBC); the Michigan Department of Corrections (MDOC); Warden Kenneth McKee; Assistant Deputy Warden (ADW) D. Johnson; ADW Cathy Stoddard; ADW S. Schooley; Inspector Young; Inspector Welton; Grievance Coordinator Carpenter; James Armstrong, Manager of the MDOC's Prisoner Affairs Section; and Resident Unit Manager (RUM) R. Wright. The court previously dismissed defendants Michigan

State Police, Jacquelyn Stasiak, Cathy Stoddard, James Armstrong, ADW D. Johnson and R. Carpenter. *See* Order Addressing Reports and Recommendations (docket no. 59). The court also dismissed plaintiff's claim that Warden McKee improperly denied grievances. *Id.* The remaining seven defendants, MDOC, IBC, Warden McKee, ADW Schooley, Inspector Young, Inspector Welton and RUM Wright have now moved for summary judgment.

## II. Chronology of events

### A. Records of the MDOC and Michigan State Police

The record reflects the following chronology of events as reflected by the records of the MDOC and the Michigan State Police. On August 21, 2007, Prisoner Cannon reported to non-party Sergeant Wakefield that he had been raped by plaintiff, his cellmate. Kenneth McKee Aff. at ¶ 5 (docket no. 86-3). In his written statement, Cannon stated in pertinent part as follows: that plaintiff asked him questions about lesbians; that plaintiff asked Cannon how he felt about gay men; that Cannon told plaintiff "flat out that I don't believe in that;" that plaintiff asked Cannon to turn down the television so they could work out; that when they started their workout sets, plaintiff put Cannon in a choke hold; that Cannon passed out and woke up with plaintiff's penis in his anus; that plaintiff threatened to kill him; that plaintiff told Cannon that plaintiff's muslim brother was going to stab Cannon, but that plaintiff was saving him; and that plaintiff held a knife to Cannon's head while he masturbated and stuck his tongue down Cannon's throat. Cannon's Statement (docket no. 86-3 at pp. 39-40). Cannon reported the incident to Sergeant Wakefield, who documented the sexual assault in a critical incident report. *See* Wakefield Critical Incident Participant Report (docket no. 86-3 at p. 37). Sergeant Wakefield interviewed another prisoner, Wilson, who confirmed that Cannon spoke to him regarding the assault. *Id.* Wilson would not provide a written statement

because he was in fear of plaintiff and plaintiff's "counterparts." *Id.* Cannon went to the prison healthcare where he was examined by NP Hammond and sent to the local emergency room for completion of a rape kit. *See* Hammond Critical Incident Report (docket no. 86-3 at p. 42). A scope of the lower anus showed no breaks in the skin or bruises. *Id.*

Later that day, plaintiff was placed in temporary segregation pending the outcome of sexual assault investigations by the Michigan State Police and MDOC. Notice of Intent (docket no. 86-3 at p. 44). Michigan State Police Sergeant Stasiak interviewed Cannon, who repeated his allegations. Michigan State Police Original Incident Report (docket no. 86-4 at pp. 3-9 ). Sergeant Stasiak read plaintiff his *Miranda* rights and interviewed him. *Id.* Plaintiff denied the allegations. and refused to give DNA evidence to compare against the material in the rape kit or discuss the matter further unless his attorney was present. *Id.*

On August 24th, Inspector Young requested that the Michigan State Police investigate the sexual assault. Memorandum to Stasiak (docket no. 86-4 at pp. 23-24). At a hearing on August 27th, plaintiff was classified to administrative segregation pending the outcome of the Michigan State Police investigation. Segregation Classification Hearing Report (docket no. 86-4 at p. 26). In support of this decision, the hearing officer, T. Wolven, determined that plaintiff was under investigation by an outside law enforcement agency for suspected felonious behavior and assigned to administrative segregation pursuant to MDOC Policy Directive 04.05.120.[1] *Id.* Following this determination, the Classification Committee assigned plaintiff to administrative segregation for the following reasons:

---

[1] Policy Directive 04.05.120 H.4. states that "administrative segregation is the most restrictive level of security classification" and that one of the five reasons for assigning a prisoner to administrative segregation is that "[t]he prisoner is under investigation by an outside authority for suspected felonious behavior."

> Prisoner is being investigated by the Michigan State Police for a possible sexual assault charge. As a result, he needs to be separated from G.P. until the outcome of their investigation at the very least.

*Id.*

In September 2007, Sergeant Stasiak worked with a laboratory regarding the victim's DNA samples. *See* Supplemental Incident Report 0002(docket no. 86-4 at p. 12). On January 17, 2008, Stasiak spoke with laboratory personnel regarding pending lab work, "samples" and the need to contact the Ionia Hospital. *Id.* The lab work was pending on February 1st. *See* Supplemental Incident Report 0003 (docket no. 86-4 at pp. 13-14). On March 27th, Stasiak left a message for Katie Meredith at the laboratory regarding the samples. *Id.* On May 16th, Stasiak noted "DNA [o]utsourced to Bode Technology," and the report showed "[s]eminal fluid on victim[']s abdominal area to be compared to suspect[']s. *Id.* On May 21st, Stasiak requested a search warrant because plaintiff had refused the previous request for DNA (i.e., a buccal swab). *Id.* A search warrant for the DNA buccal swab or blood of the suspect [plaintiff] was obtained on that date. *Id.* On May 22nd, Stasiak and Inspector Young met with plaintiff, who stated "that he wanted it noted that he was not volunteering for a buccal swab." *Id.* Plaintiff consented to a swab and allowed to be fingerprinted when presented with the search warrant. *Id.* At that time, plaintiff maintained his innocence, stated that Cannon made up the incident, and stated his desire to pursue charges for a false police report if it was found not to be his seminal fluid. *Id.* After pending for some months, lab report for plaintiff's DNA test was received on December 4th. Supplemental Incident Reports 0004 and 0005 (docket no. 86-4 at pp. 15-16).

Then, on January 20, 2009, a Michigan State Police forensic scientist matched plaintiff's DNA with the swabs taken from Cannon. Michigan State Police Laboratory Report (Jan.

4

20., 2009) (docket no. 86-4 at pp. 30-31). Sergeant Stasiak learned of the positive match with plaintiff on February 6th and advised Inspector Young of this fact on February 9th. Supplemental Incident Report 0005 (docket no. 86-4 at p. 16); Stasiak e-mail (Feb. 9, 2009) (docket no. 86-4 at p. 33). On February 10th, Inspector Young advised the hearings officer that the lab had identified the DNA obtained from Cannon's rape kit as a match with plaintiff's DNA, and that the Michigan State Police were referring the case for prosecution. Memorandum to hearings officer (Feb. 10, 2009) (docket no. 86-4 at p. 35). On March 9th, MDOC Hearings Officer Israel spoke to Cannon. *See* Memorandum (March 5, 2009) (docket no. 86-4 at p. 37). At that time, Cannon changed his story, claiming that there was no sexual touching between plaintiff and him. *Id.* Cannon stated that he allowed plaintiff to perform oral sex on him, that plaintiff ejaculated on Cannon's leg, and that he (Cannon) "shot a move" (i.e., made false claims in order to get moved out of the same cell with plaintiff). *Id.* When Sergeant Stasiak re-interviewed Cannon on March 11th, Cannon stated that his original story was true, but that he had 13 more years of incarceration remaining, had heard that plaintiff was the head of the Moorish Science Temple of America at IBC, knew that plaintiff could hurt him or have someone else hurt him, and did not want to spend the rest of his incarceration in the protection unit. Supplemental Incident Report 0006 (docket no. 86-4 at pp. 17-19). Based upon Cannon's refusal to cooperate, Hearing Officer Israel held a hearing on March 10, 2009, at which time he reduced the charge against plaintiff from sexual assault to sexual misconduct (prisoner with prisoner), found plaintiff guilty of the reduced charge, placed him on 30 days of detention, and then credited him with 30 days served. Hearing Report (March 10, 2009) (docket no. 86-4 at pp. 39-40).

On April 15th, the Assistant County Prosecutor reviewed the incident in light of Cannon's refusal to cooperate and decided not to prosecute the case. Supplemental Incident Report

5

0007 (docket no. 86-4 at p. 20). Security Classification Committee interviewed plaintiff and reclassified him to the general population due to the termination of the Michigan State Police investigation. Segregation Behavior Review (docket no. 86-4 at p. 44). Plaintiff was released from administrative segregation on April 21st. *Id.*

B. **Plaintiff's declaration**

Plaintiff has filed a 19-page "declaration" in opposition to the motion for summary judgment. In this document, plaintiff does not contest the timeline as reflected in the MDOC and Michigan State Police records. However, plaintiff contests the veracity of Cannon's statements and questions the validity of the evidence against him. In his declaration plaintiff denied (among other things): that he assaulted Cannon; that he refused to give any person his DNA; that he possessed a weapon; that he used a weapon on Cannon; that he choked Cannon or engaged in oral sex with him; that he threatened to kill Cannon; and that he made statements about pursuing litigation related to the filing of a false report. Declaration of Martin Solomon (docket no. 89-2). Plaintiff further stated (among other things): that he told defendants that he and Cannon engaged in consensual sex; that Cannon was a homosexual who loves oral sex; that Sergeant Stasiak and Inspector Welton admitted that they would have Cannon give false statements; that Warden McKee told plaintiff he would be sent to a Level Five facility because of filing grievances and lawsuits; that he was sent to a Level Five facility out of retaliation; that Warden McKee provided false statements in his affidavit; that the MDOC already had access to plaintiff's DNA in CODIS;[2] that Inspector Young fabricated

---

[2] Pursuant to congressional authorization, the FBI established "CODIS" (the Combined DNA Index System), which is described as "a national database containing electronic DNA profiles of convicted offenders from the state and federal systems, evidence from crime scenes, and unidentified human remains that allows government officials to match an electronic DNA profile to its donor's identity for 'law enforcement identification purposes,' 'judicial proceedings,' and 'criminal defense purposes.' 42 U.S.C. § 14132(a), (b)(3)." *Kaemmerling v. Lappin*, 553 F.3d 669, 673 (D.C. Cir. 2008). "Law enforcement officers

6

plaintiff's statement that no sexual activity occurred between plaintiff and Cannon; and that the Michigan State Police laboratory reports regarding the DNA tests are questionable.

## II.  Defendants' Motion for Summary Judgment

### A.  Legal Standard

Plaintiff seeks relief pursuant to 42 U.S.C. § 1983, which confers a private federal right of action against any person who, acting under color of state law, deprives an individual of any right, privilege or immunity secured by the Constitution or federal laws.  *Burnett v. Grattan*, 468 U.S. 42, 45 n. 2 (1984);  *Stack v. Killian*, 96 F.3d 159, 161 (6th Cir.1996).  To state a § 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws of the United States, and (2) that the defendant deprived him of this federal right under color of law. *Jones v. Duncan*, 840 F.2d 359, 360-61 (6th Cir. 1988); 42 U.S.C. § 1983.

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the standard for deciding a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case.  Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

---

use the CODIS to match one forensic crime scene sample to another, thereby connecting unsolved crimes through a common perpetrator, and to match evidence from the scene of a crime to a particular offender's profile, thereby solving crimes committed by known offenders." *Id.*

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). However, the court is not bound to blindly adopt a non-moving party's version of the facts. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

      **B.**    **Eleventh Amendment immunity**

          **1.**    **MDOC and Bellamy Creek**

Plaintiff has named the MDOC and its IBC facility as defendants in this action. The Eleventh Amendment provides that "[t]he judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens of Subjects of a Foreign State." *See, e.g., Thiokol Corp. v. Department of Treasury, State of Michigan, Revenue Division*, 987 F.2d 376, 381 (6th Cir. 1993) (Eleventh Amendment immunity is far reaching, barring "all suits, whether for injunctive, declaratory or monetary relief, against the state and its departments"). The states and their departments are immune under the Eleventh Amendment from suit in the federal courts, provided the state has not waived immunity and Congress has not expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98-101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir.1993). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal

8

court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir.1986). *See McCoy v. Michigan*, 369 Fed. Appx. 646, 653-54 (6th Cir. 2010) (the MDOC is an arm of the State of Michigan entitled to sovereign immunity under the Eleventh Amendment). Accordingly, the MDOC and Bellamy Creek are entitled to summary judgment on plaintiff's claims.[3]

### 2. Warden McKee, ADW Schooley, Inspector Young, Inspector Welton and RUM Wright

Plaintiff has sued defendants Warden McKee, ADW Schooley, Inspector Young, Inspector Welton and RUM Wright in their official capacities, seeking damages and injunctive relief. Plaintiff's § 1983 claims for monetary damages against these MDOC employees in their official capacities are barred by Eleventh Amendment immunity. *See Will v. Department of State Police*, 491 U.S. 58, 64-71 (1989); *Rodgers v. Banks*, 344 F.3d 587, 594 (6th Cir. 2003) ("the Eleventh Amendment bars § 1983 suits seeking money damages against states and against state employees sued in their official capacities"). Accordingly, these five defendants are entitled to summary judgment on plaintiff's claims for damages against these defendants acting in their official capacities.

### C. Plaintiff's claims for injunctive relief

Plaintiff's complaint seeks unspecified injunctive relief. Compl. at p. 24 (docket no. 1). In the absence of a specific claim for injunctive relief, defendants assume that the requested injunctive relief involved plaintiff's release from administrative segregation. Based on this

---

[3] The court notes that the State of Michigan is entitled to dismissal on plaintiff's claim for damages because it is not a "person" subject to liability for monetary damages under § 1983. *See Lapides v. Board of Regents of University System of Georgia*, 535 U.S. 613, 617 (2002) ("a State is not a 'person' against whom a § 1983 claim for money damages might be asserted").

9

assumption, defendants contend that plaintiff's claim for injunctive relief is moot because while he was in administrative segregation when he filed this action in September 2008, he has now been released. Defendants' Brief at p. 8.

In his response, plaintiff asserted that he seeks injunctive relief for matters other than release from segregation. *See* Plaintiff's Response (docket no. 89). Plaintiff later addressed his request for injunctive relief in a separate "motion for preliminary and/or permanent injunction" (docket no 96), stating: that his confinement level should be reduced back to the "status quo" before the false charges of sexual assault; that defendants be enjoined from future misconduct against him; and, that defendants reduce his security level "from a Level Five to a Level Four general population immediately." *See* Motion for preliminary and/or permanent injunction at p. 4 (docket no. 96). According to defendants, plaintiff received that classification at IBC because of the ongoing Michigan State Police investigation into the alleged rape, that he has since been moved from IBC, and that he filed the present motion for preliminary injunction based upon his classification at the Marquette Branch Prison (MBP). Defendants point out that there is no allegation or evidence before the court that they work at MBP or have any control over plaintiff's current security classification level at that facility. In addition, defendants have submitted copies of documents related to plaintiff's classification since he left IBC, i.e., plaintiff's Security Classification Screen completed at Baraga Maximum Correctional Facility (AMF) on July 9, 2009 (docket no 97-1) and a Security Reclassification Notice from MBP for fighting on February 4, 2010 (docket no. 97-2). The court's docket sheet reflects that plaintiff is currently housed at a different facility, the Chippewa Correctional Facility (MSP) in Kincheloe, Michigan. *See* Change of Address (docket no. 105).

A preliminary injunction is an extraordinary remedy which should be granted only if the movant carries his burden of proving that the circumstances clearly demand it. *Overstreet v. Lexington-Fayette Urban County Government*, 305 F.3d 566, 573 (6th Cir. 2002); *Fort Wayne Women's Health Organization v. Brane*, 734 F.Supp. 849, 850 (N.D. Ind. 1990). Where a prison inmate seeks an order enjoining state prison officials, this court is required to proceed with the utmost care and must recognize the unique nature of the prison setting. *See Kendrick v. Bland*, 740 F.2d 432, 438, n. 3 (6th Cir. l984). Courts must accord prison administrators "wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Ward v. Dyke*, 58 F.3d 271, 273 (6th Cir. 1995). Correctional officials are professional experts in matters of security and discipline; as such they are better suited to make decisions about security and discipline than are the courts. *Bell v. Wolfish,* 441 U.S. 520, 547 (1979). Moreover, "the operation of our correctional facilities is peculiarly the province of the Legislative and Executive Branches of our Government, not the Judicial." *Id.* at 548. For these reasons, a plaintiff attacking administrative decisions about issues of security and discipline must meet a heavy burden.

Based upon this record, it is unnecessary for the court to address the merits of plaintiff's request for injunctive relief. Plaintiff's transfer from IBC rendered his claims for injunctive relief against that facility's staff moot. *See Henderson v. Martin*, 73 Fed. Appx. 115, 117 (6th Cir. 2003) (prisoner's claim for injunctive relief against prison officials became moot when prisoner was transferred from the prison of which he complained to a different facility); *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996) (prisoner's claims for declaratory and injunctive relief for prison staff's improper examination of his legal mail found moot because he was no longer confined

11

at the facility that searched his mail). Accordingly, plaintiff's motion for preliminary and/or permanent injunction (docket no. 96) should be denied and defendants' motion for summary judgment should be granted with respect to plaintiff's claim for injunctive relief.

        **D.**        **Qualified immunity**

The crux of plaintiff's claim is the allegation that defendants retaliated against him in violation of the First Amendment and subjected him to cruel and unusual punishment in violation of the Eighth Amendment by placing him in administrative segregation for over 18 months. Defendants seek summary judgment on these claims based upon the defense of qualified immunity. Qualified immunity from civil actions for damages is not a mere defense to liability, but rather absolute immunity from suit and an entitlement not to stand trial, which should be determined at the earliest possible stage in litigation. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001). Government officials have qualified immunity from suit under § 1983 for damages arising out of the performance of their official duties if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Consequently, the doctrine of qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). "A defendant enjoys qualified immunity on summary judgment unless the facts alleged and the evidence produced, when viewed in the light most favorable to the plaintiff, would permit a reasonable juror to find that: (1) the defendant violated a constitutional right; and (2) the right was clearly established." *Morrison v. Board Of Trustees Of Green Township*, 583 F.3d 394, 400 (6th Cir. 2009). Courts can exercise their sound discretion "in deciding which of the two prongs of the qualified immunity analysis should be exercised first in light of the circumstances of the particular case at hand." *Jones v.*

*Byrnes*, 585 F.3d 971, 975 (6th Cir. 2009), quoting *Pearson v. Callahan*, -- U.S. --, 129 C. Ct. 808, 818 (2009).

### 1. First Amendment retaliation claim

To prove a First Amendment retaliation claim, plaintiff must establish three elements: "1) the plaintiff engaged in activities protected by the Constitution or statute; 2) the defendant took an adverse action that would deter a person of ordinary firmness from continuing to engage in that conduct; and 3) that this adverse action was taken at least in part because of the exercise of the protected conduct." *Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001). *See also Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). To establish the causation element of a retaliation claim, "the plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct." *Smith*, 250 F. 3d at 1037, *citing Mount Health City School District Board of Education v. Doyle*, 429 U.S. 274, 287 (1977). "[B]ecause prisoner retaliation claims are easily fabricated, and accordingly pose a substantial risk of unwarranted judicial intrusion into matters of general prison administration, we are careful to require non-conclusory allegations." *Bennett v. Goord*, 343 F.3d 133, 137 (2nd Cir. 2003) (internal quotation marks omitted).

Viewing the facts in the light most favorable to plaintiff, the court concludes that defendants are entitled to qualified immunity with respect to the retaliation claim because there was no constitutional violation. Assuming that plaintiff established the first two elements of a retaliation claim (i.e., that he engaged in protected activity by filing grievances and lawsuits and suffered an adverse action in the form of administrative segregation), he has failed to establish the third element of causation. It is undisputed: that plaintiff was placed in administrative segregation on August 27,

13

2007 after Cannon filed the rape charge; that he remained in segregation throughout the Michigan State Police investigation; and that he was released from segregation on April 21, 2009, after the Michigan State Police investigation was closed. Plaintiff's treatment was consistent with the classification applied to prisoners while being investigated by an outside agency for suspected felonious activity. *See* PD 04.05.120 H.4. The length of plaintiff's administrative segregation was due to the ongoing investigation by the Michigan State Police. He was released when the Michigan State Police closed the investigation and a decision was made not to prosecute the sexual assault. Prison staff had a valid reason for placing plaintiff in administrative segregation. Given the serious charges against plaintiff, prison staff acted reasonably in separating him from the general population.[4] While plaintiff points to the delay caused by obtaining a search warrant for the DNA and testing his DNA, those delays were part of the Michigan State Police investigation. Plaintiff has not presented any evidence to establish that his administrative segregation on August 21, 2007, was caused, in part, by exercise of any particular protected activity.

In the absence of any constitutional violation for retaliation, defendants are entitled to qualified immunity for their actions in placing plaintiff in administrative segregation and keeping him at that classification until the termination of the Michigan State Police investigation. Accordingly, defendants are entitled to summary judgment on the First Amendment claim.

---

[4] The court notes that Warden McKee stated in his affidavit that "[s]uch allegations must be taken seriously by prison staff, and it would pose a danger to other prisoners to allow Solomon to remain in general population." McKee Aff. at ¶ 9.

### 2. Eighth Amendment claim

Plaintiff contends that his administrative segregation constituted cruel and unusual punishment in violation of the Eighth Amendment. Once again, defendants did not violate plaintiff's constitutional rights. After a person is incarcerated, only the unnecessary and wanton infliction of pain constitutes cruel and unusual punishment is prohibited by the Eighth Amendment. *Whitley v. Albers*, 475 U.S. 312, 319 (1986). "Because routine discomfort is part of the penalty that criminal offenders pay for their offenses against society, only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (internal citations and quotation marks omitted). "Because placement in segregation is a routine discomfort that is a part of the penalty that criminal offenders pay for their offenses against society, it is insufficient to support an Eighth Amendment Claim." *Harden-Bey v. Rutter*, 524 F.3d 789, 795 (6th Cir. 2008) (internal quotation marks omitted). *See, also, Bradley v. Evans*, No. 98-5861, 2000 WL 1277229 at *8 (6th Cir. Aug. 23, 2000) (placement in administrative segregation does not constitute cruel and unusual punishment unless a prisoner can establish that he was also denied basic human needs and requirements); *Pearce v. Sapp*, No. 97-6373, 1999 WL 503568 at *4 (6th Cir. July 9, 1999) (placement in administrative segregation is a routine discomfort that is part of the penalty that criminal offenders pay for their offenses against society).

Plaintiff's placement in administrative segregation did not violate his rights under the Eighth Amendment. In the absence of any constitutional violation, defendants are entitled to qualified immunity for their actions in placing plaintiff in administrative segregation and keeping

15

him at that classification until the termination of the Michigan State Police investigation. Accordingly, defendants are entitled to summary judgment on the Eighth Amendment claim.[5]

### 3. Fifth and Fourteenth Amendment claims

Plaintiff's complaint makes fleeting references to alleged violations of the Fifth Amendment (¶¶ 21(a) and 22) and to alleged violations of the Fourteenth Amendment (¶¶ 21(a), 22, 33, 34, 48 and 50). Plaintiff's references to the Fifth and Fourteenth Amendments, interspersed within his rambling 25-page complaint, are insufficient to give defendants fair notice of these constitutional claims. Simply listing constitutional amendments in a complaint does not state a cause of action under § 1983. While *pro se* complaints require less stringent reading than those drafted by attorneys, *Haines v. Kerner*, 404 U.S. 519 (l972), the duty to be "less stringent" with *pro se* complaints does not require this court to conjure up unpled allegations. *McDonald v. Hall*, 610 F.2d 16 (lst Cir. l979). "[M]ore than bare assertions of legal conclusions is ordinarily required to satisfy federal notice pleading requirements." *Scheid v. Fanny Farmer Candy Shops*, 859 F.2d 434, 436 (6th Cir. l988). Accordingly, plaintiff's Fifth and Fourteenth Amendment claims should be dismissed on that basis. *See* 28 U.S.C. §§ 1915(e)(2) and 1915A, and 42 U.S.C. § 1997e(c) (the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief).

---

[5] The court notes that plaintiff's action does not involve a due process claim for an alleged long-term indefinite confinement in administrative segregation which was atypical or unusual. *See Harden-Bey*, 524 F.3d at 792-95. As previously discussed, plaintiff's confinement was not atypical, indefinite or unusual. Rather, his confinement was standard practice for a prisoner under investigation for a felony charge, and ended upon termination of the investigation.

16

Aside from the notice issue, plaintiff's allegations fail to state a cause of action under either the Fifth and Fourteenth Amendments. In ¶ 21(a), plaintiff alleged that defendants conspired to deprive him of "his liberty interest to remain amongst general population" and of his "equal protection of Mich Dept Corrections Policies State and Federal [sic]." Plaintiff has no constitutional right to be confined in a particular institution or to enjoy a certain classification. *See Olim v. Wakinekona*, 461 U.S. 238, 245-46 (1983); *Meachum v. Fano*, 427 U.S. 215, 225 (1976). In addition, plaintiff does not have a liberty interest to be placed in the prison's general population. *McGaughy v. Johnson*, 63 Fed. Appx. 177, 178 (6th Cir. 2003), citing *Sandin v. Conner*, 515 U.S. 472 (1995). Accordingly, plaintiff has failed to state a cause of action on these grounds.

In ¶ 22, plaintiff alleged that unnamed MDOC officials initiated a civil conspiracy with Sergeant Stasiak of the Michigan State Police to subject him to cruel and unusual punishment, motivated by defendants' efforts to deter and penalize plaintiff for filing lawsuits and grievances. Plaintiff included similar allegations in ¶ 33 (against defendants Schooley, McKee, Welton, Stasiak, Young and Johnson), in ¶ 34 (against defendant Armstrong), in ¶ 48 (against defendant Stoddard), and again in ¶ 50 (all defendants). It is unnecessary for the court to address plaintiff's claims against defendants Stasiak, Armstrong and Stoddard, because these defendants have been dismissed. *See* Order Addressing Reports and Recommendations (docket no. 59). As to the remaining defendants, plaintiff's allegations in ¶¶ 22, 33 and 50 do not give rise to claims under the Fifth or Fourteenth Amendments. Rather, they are reiterations of his First Amendment claim for retaliation and Eighth Amendment claim for cruel and unusual punishment. Accordingly, plaintiff has failed to state a cause of action for a claim under either the Fifth or Fourteenth Amendment.

### IV. Recommendation

For the reasons set forth above, I respectfully recommend that defendants' motion for summary judgment (docket no. 85) be **GRANTED**, that plaintiff's motion for a preliminary and/or permanent injunction (docket no. 96) be **DENIED**, and that this action be DISMISSED.


Dated: January 13, 2011                             /s/ Hugh W. Brenneman, Jr.
                                                    HUGH W. BRENNEMAN, JR.
                                                    United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).